UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BNSF RAILWAY COMPANY,

Plaintiff,

v.

GILSTER-MARY LEE CORPORATION,
ACE AMERICAN INSURANCE
COMPANY and ACE PROPERTY AND
CASUALTY INSURANCE COMPANY,

Defendants.

Case No. 15-cv-250-JPG-SCW

## MEMORANDUM AND ORDER

This matter comes before the Court on four motions for summary judgment filed by defendant Gilster-Mary Lee Corporation ("GML") (Doc. 55), defendants ACE American Insurance Company and ACE Property and Casualty Insurance Company (collectively, the "ACE defendants") (Doc. 57), and plaintiff BNSF Railway Company ("BNSF") (Docs. 60 & 62).

This case arose after a BNSF employee, Cecil A. Parrish, was injured while working for BNSF at GML's rail yard. Parrish filed a lawsuit against BNSF under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*: *Parrish v. The Burlington Northern and Santa Fe Railway Company*, No. 13-cv-1054-JPG-SCW. BNSF and Parrish settled that lawsuit.

In the case at bar, BNSF seeks to hold GML and GML's insurers, the ACE defendants, liable for the costs of defending in *Parrish* and the settlement amount. It believes a written Industry Track Agreement (the "Sidetrack Agreement") between BNSF and GML obligates GML to indemnify it for those amounts. BNSF also believes GML breached the Sidetrack Agreement by failing to name BNSF as an additional insured on an insurance policy that would have covered BNSF's liability and defense in *Parrish*. BNSF tendered the defense of the case to GML and

asked GML to initiate an insurance claim on its behalf, but GML refused.

Additionally, BNSF believes a commercial general liability ("CGL") insurance policy that defendant ACE American Insurance Company ("ACE American") issued to GML and an umbrella insurance policy that defendant ACE Property and Casualty Insurance Company ("ACE P&C") issued to GML obligates the ACE defendants to defend and indemnify BNSF against Parrish's claims in the underlying suit.   BNSF tendered the defense of the case to the ACE defendants, who refused the tender.

I.   **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   For the purposes of this motion, all parties agree to the relevant facts, so the question is whether the moving party is entitled to judgment as a matter of law on the questions at issue in the motion.

II.   **Facts**

A.   <u>Parrish's Injury</u>

On April 12, 2013, Cecil Parrish, a BNSF employee, was injured while working for BNSF at GML's rail yard near track owned and maintained by GML.   In the immediate area of the track, Parrish was using a tubular steel bar (the "pry bar") owned by GML to align a stuck coupler on a BNSF railcar with the coupler on a BNSF locomotive in preparation for attaching the two and moving the railcar.   The pry bar slipped, and Parrish fell, snapping his ankle sideways at a ninety degree angle to his leg.   Parrish sued BNSF under FELA, and the parties settled the case.

B.   Sidetrack Agreement

At the time of Parrish's injury, BNSF and GML were parties to the Sidetrack Agreement

dated February 26, 1998, a standard agreement BNSF drafted and executed with the owners of

industrial facilities on which BNSF provided rail service by a track other than the main track.

Section 8(a) of the Sidetrack Agreement provides certain indemnity obligations:

> [GML] shall indemnify and save harmless [BNSF] from any and all claims,
> demands, suits, losses, judgments, costs, damages, or expenses on account of
> injuries to or death of any and all persons whomsoever, and any and all loss or
> destruction of or damage to property to whomsoever belonging, including property
> owned by, leased or rented to, or in the care, custody or control of the parties hereto,
> arising or growing out of or in any manner connected with the maintenance,
> operation, and use of the Track and crossings covered by this Agreement, or caused
> or occasioned, in whole or in part, by reason of or arising during the presence of the
> person of [GML], its subcontractors, the employees or agents of either, or third
> parties upon or in proximity to the Track covered by this Agreement.   If any claim
> or liability shall arise from the joint or concurring negligence of the parties hereto,
> it shall be borne by them in proportion to the degree of fault or negligence of both
> of them as provided by law.

Sidetrack Agmt. § 8(a) (Doc. 1-1 at 4).

The Sidetrack Agreement also obligated GML to purchase certain insurance for which

BNSF would be named as an "additional insured":

> (a)   [GML] shall, at its expense, procure and maintain throughout the term of this
> Agreement . . . a comprehensive general form of insurance covering liability,
> including, but not limited to, . . . Personal Injury . . . .   [BNSF] SHALL BE
> NAMED AS AN ADDITIONAL INSURED PARTY COVERED BY THE
> POLICY.
>
> * * *
>
> (c) . . . .   Insurance must provide for coverage of incidents occurring within fifty
> (50) feet of a railroad track, and any provision in the insurance policy to the
> contrary must be specifically deleted. . . .

Sidetrack Agmt. § 7 (Doc. 1-1 at 3-4).

3

C.    Insurance Policies

In place at that same time was a CGL Policy written by ACE American to GML (Policy No. HDO G27018233; Doc. 58-2).   An endorsement to the CGL Policy provides coverage for "additional insureds":

> only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> > 1. Your acts or omissions; or
> > 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s). . . .

Endorsement 21 to CGL Policy § II.A (Doc. 58-2 at 55).

The CGL also contains an exclusion, commonly referred to as the "employer's-liability exclusion," stating that the CGL Policy coverage does not apply to:

> **e.  Employer's Liability**
>
> "Bodily injury to:
>
> (1)   An "employee" of the insured arising out of and in the course of:
> > (a)   Employment by the insured; or
> > (b)   Performing duties related to the conduct of the insured's business. . . .
>
> * * *
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract".

CGL Policy § I.A.2.e (Doc. 58-2 at 17).   In turn, the CGL Policy defines an "insured contract" to mean, among other things, a sidetrack agreement.   CGL Policy § V.9.b. (Doc. 58-2 at 29).

Also in place at the time was a commercial umbrella liability policy ("Umbrella Policy") written by ACE P&C to GML (Policy No. G27050906) that generally covered sums in excess of what ACE American became obligated to pay under the CGL Policy, the "underlying insurance."

4

The umbrella policy covers anyone insured under the CGL Policy but provides that such coverage would be no broader than the coverage provided by the CGL Policy.   Umbrella Policy § II.B.6 (Doc. 58-3 at 7).

     D.    <u>The Lawsuit</u>

BNSF filed this lawsuit in March 2015 asserting claims against GML for contractual indemnity (Count I) and breach of contract to provide insurance (Count II).   BNSF amended its complaint in October 2015 to add claims against GML for implied indemnity (Count III) and against the ACE defendants for breach of contract (Counts IV and VI) and violation of the Illinois Insurance Code, 215 ILCS 5/155 (Counts V and VII).

**III.**    **Analysis**

     A.    <u>BNSF-GML Dispute: the Sidetrack Agreement</u>

GML (Doc. 55) and BNSF (Doc. 60) have both filed motions for partial summary judgment on the issue of whether the indemnity clause of the Sidetrack Agreement requires GML to indemnify BNSF for its own negligence.   Each has responded to the respective motions (Docs. 66 and 67), and BNSF has replied to GML's response (Doc. 70).

BNSF argues that the indemnity clause clearly provides indemnification for all liability – even arising solely from BNSF's negligence – other than where there is "joint or concurring negligence" of the parties to the Sidetrack Agreement.   In other words, BNSF's position is that if it or GML is 100% at fault for Parrish's injury, GML must indemnify BNSF for all of its losses from Parrish's lawsuit, but if BNSF is 99% at fault and GML is 1% at fault, GML must indemnify BNSF for only 1% of its losses.   In support of its position, BNSF relies heavily on the first sentence of the indemnity clause, which, boiled down to its essence, states, "[GML] shall

indemnify and save harmless [BNSF] from any and all . . . losses . . . on account of injuries to . . . any . . . persons . . . in any manner connected with the . . . use of the Track . . . covered by this Agreement," but also notes that the second sentence of the indemnity clause allows for proportionate liability.   Sidetrack Agmt. § 8(a).   BNSF asks the Court to declare on summary judgment this limited issue of law.   This issue bears on Count I, a state law claim that GML breached the indemnity clause of the Sidetrack Agreement by failing to indemnify BNSF for the settlement amount and BNSF's costs in *Parrish*.

On the other side, GML takes the position that the Sidetrack Agreement does not require it to indemnify BNSF for BNSF's own negligence because the Sidetrack Agreement does not clearly and unequivocally so state, instead requiring each party only to bear the costs of its own negligence in proportion to its respective degree of fault.   In support of its position, GML points to the final sentence of the indemnity clause, which states, "If any claim or liability shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them in proportion to the degree of fault or negligence of both of them as provided by law."   Sidetrack Agmt. § 8(a).   It also points to language in § 8(b) of the Sidetrack Agreement wherein GML agrees to indemnify BNSF for losses from injuries partially caused by BNSF using language which was not included in § 8(a).[1]

In light of these two positions, it appears that both parties agree liability would be split proportionally if both are at fault for Parrish's injury and that the only disputed question is whether GML must indemnify BNSF for BNSF's negligence if BNSF is 100% at fault.   Deciding this

---

[1] In support of its position, GML also cites an unpublished decision of the Illinois Court of Appeals, *BNSF Ry. Co. v. ProBuild N. LLC*, No. 1-12-3648, 2014 WL 2619015 (Ill. App. Ct. June 11, 2014).   Pursuant to Illinois Supreme Court Rule 23(e), GML should not have cited this case as precedent since it is unpublished, and the Court will therefore not consider it in its analysis.   To the extent this Court's conclusions resemble those in *ProBuild*, the Court has arrived there on its own without reliance on that case.

issue, of course, requires the Court to construe the indemnity clause in the Sidetrack Agreement. No party disputes that Illinois law governs this issue, and under Illinois law, when construing a contract like an indemnity agreement, the Court must give effect to the intent of the parties. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007); *Virginia Sur. Co. v. Northern Ins. Co. of New York*, 866 N.E.2d 149, 153 (Ill. 2007). The Court must first attempt to determine this intent solely from the plain and ordinary meaning of the contract language, which is usually the best indication of the parties' intent. *Gallagher*, 874 N.E.2d at 58; *Virginia Sur.*, 866 N.E.2d at 153. The Court should also consider the contract as a whole because words often derive their meaning from their context. *Gallagher*, 874 N.E.2d at 58. If the language so viewed is susceptible to more than one meaning, it is ambiguous, and the Court may consult extrinsic or parol evidence to determine the parties' intent. *Gallagher*, 874 N.E.2d at 58.

Interpretation of the indemnity clause in the Sidetrack Agreement must be viewed in light of the Illinois rule that "an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract . . . or such intention is expressed in unequivocal terms." *Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.*, 70 N.E.2d 604, 607 (Ill. 1946) (internal citations omitted). This is because assuming liability for another's negligence, over which the indemnitor has no control, is so hazardous, unusual and extraordinary an arrangement that it should be "beyond doubt by express stipulation" that the indemnitor intended to assume liability for the other party's negligence. *See id.* (citing *Perry v. Payne*, 66 A. 553 (Pa. 1907)).

Whether a particular indemnity contract contains a sufficiently explicit intent "depends upon the particular language used and the factual setting of the case," which cannot always be

determined by analyzing and comparing the myriad court opinions addressing the issue.   *Zadak v. Cannon*, 319 N.E.2d 469, 471 (Ill. 1974).   There are, however, several discernable guiding principles from the caselaw as a whole.   For example, an agreement that expressly provides for indemnification for the *indemnitor's* negligence is not a clear indication of an intent to indemnify for the *indemnitee's* negligence as well, even if it purports to cover "any and all" losses.   *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 533 (Ill. 2008) (citing *Westinghouse*, 70 N.E.2d at 607; *Blackshare v. Banfield,* 857 N.E.2d 743, 746 (Ill. App. Ct. 2006); *McNiff v. Millard Maint. Serv. Co.*, 715 N.E.2d 247, 248 (Ill. App. Ct. 1999); *Hankins v. Pekin Ins. Co.,* 713 N.E.2d 1244, 1248 (Ill. App. Ct. 1999)); *Burlington N., Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 283-84 (8th Cir. 1982).   On the other hand, depending on the context of the entire contract, if the indemnity agreement covers "any and all" losses and contains no express applications or limitations to the indemnitor's negligence, it *may* indicate the parties intended it to cover the indemnitee's negligence.   *Buenz*, 882 N.E.2d at 533-34 (citing *Economy Mech. Indus., Inc. v. T.J. Higgins Co.,* 689 N.E.2d 199, 202-03 (Ill. App. Ct. 1997); *Rios v. Field,* 270 N.E.2d 98, 100-01 (Ill. App. Ct. 1971); *Haynes v. Montgomery Ward & Co.,* 198 N.E.2d 548, 551 (Ill. App. Ct. 1964)); *Ahlvers v. Terminal R.R. Ass'n,* 334 N.E.2d 329, 333 (Ill. App. Ct. 1975).   "May" is key though, because, as in this case, there may be other parts of the contract which, when the contract is viewed as a whole, make the purported intent to indemnify for the indemnitee's own negligence less clear.   Because of the nature of an indemnity agreement, the Court should strictly construe it against indemnity. *Hankins v. Pekin Ins. Co.*, 713 N.E.2d 1244, 1248 (Ill. App. Ct. 1999); *Hader v. St. Louis S.W. Ry. Co.*, 566 N.E.2d 736, 742 (Ill. App. Ct. 1991)..

      In *Buenz*, the Illinois Supreme Court considered an indemnification clause which stated, in

pertinent part:

> [Frontline] shall indemnify [COSCO] against, and hold [COSCO] harmless for any and all claims . . . arising out of, [in] connection with, or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of COSCO.

*Buenz*, 882 N.E.2d at 534.   The *Buenz* court noted that the provision in issue "contains no limiting language to suggest that the indemnity provided is not intended to cover claims resulting from COSCO's own negligence," and therefore "the express language . . . clearly and explicitly provides indemnification for COSCO's own negligence."   *Id*.

The first sentence of the indemnity clause of the Sidetrack Agreement is not distinguishable from the language in *Buenz* and clearly provides that GML will indemnify BNSF for BNSF's own negligence.   The first sentence uses the expansive "any and all" language that the *Buenz* held provided indemnity for an indemnitee's own negligence unless there is other language limiting the scope of the indemnity.   The first sentence does not contain any language limiting the scope of that indemnity.   Therefore, under the rule of *Buenz*, the first sentence provides for indemnity for BNSF's own negligence, whether BNSF was 1% at fault, 100% at fault, or anywhere in between.

In contrast, the second sentence of the indemnity clause of the Sidetrack Agreement equally clearly provides that if both parties are negligent, they will bear the loss only in proportion to their degree of fault.   Thus, the second sentence provides no indemnity for BNSF's own negligence where GML is also negligent, and contradicts the scope of the indemnity obligation set forth in the first sentence.

Read together – the Court must consider the Sidetrack Agreement as a whole – the first and second sentences of the indemnity clause create uncertainty about if and when the parties intended

for GML to indemnify BNSF for its own negligence.   The first sentence provides for full indemnity regardless of degree of fault; the second sentence provides for proportionate indemnity based on degree of fault.   For example, assume BNSF and GML were each partially at fault but BNSF is adjudged to have 100% liability under FELA based on breach of its non-delegable statutory duty to provide a reasonably safe work environment.[2]   Sentence one would provide for full indemnity from GML for the entire judgment.   Sentence two, on the other hand, would provide for indemnity for only GML's percentage of fault.   Because the sentences are inconsistent with each other, they cannot be said to amount to the "clear and explicit language" or expression of intent "in unequivocal terms" as required by *Westinghouse* before an indemnity agreement will be read to indemnify a party for its own negligence.

BNSF asks the Court to read the two sentences in a way that they would be consistent with each other.   It argues that the first sentence only applies if BNSF or GML is 100% at fault for the injury, but that the second sentence applies where they share fault.   The stumbling block, however, is that the first sentence does not limit the indemnity promise to where one party is completely at fault and does not imply in any way it is limited by the second sentence.   That could have been done by, say, combining the two sentences and connecting them with, ". . . ; Provided, if any claim or liability shall arise from the joint or concurring negligence. . . ."   That would imply the second sentence is an exception to the first.   This understanding could also have been accomplished by introducing the second sentence with language such as, "Notwithstanding the foregoing, if any claim or liability shall arise from the joint or concurring negligence. . . ."   The parties did not include this language.

---

[2] Under FELA, a railroad may be liable based solely on breach of its non-delegable duty to provide its employees with a safe work place even if the workplace is unsafe because of the negligence of a third party.   *See Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 8-10 (1963).

Additionally, BNSF's proposed interpretation is a strained reading that leads to an absurd result:   GML would bear the full cost of an injury if BNSF is 100% at fault, but only 1% of the cost if BNSF is 99% at fault and GML is responsible for the other 1%.   This would put BNSF in the untenable position of arguing it was 100% at fault, even if it were clear GML was partly at fault.   Similarly, GML would have an incentive to assume some degree of fault even if it were actually completely innocent.   The Court will not strain this awkward indemnity clause to cover BNSF for its own negligence.

Because the Court has determined the indemnity clause of the Sidetrack Agreement does not suffice under *Westinghouse* to clearly provide indemnity for BNSF's own negligence, it need not address other contract interpretation principles such as construing the agreement against its drafter or construing the contract so all provisions have meaning.   Illinois' public policy against indemnifying a party for its own negligence overrides those interpretive guidelines in this case.

For this reason, GML is entitled to summary judgment on the issue of whether the indemnity clause requires it to indemnify BNSF for BNSF's own negligence; it does not.   The determination of this issue with respect to the Sidetrack Agreement does not appear to resolve conclusively any count in BNSF's Amended Complaint.

B.    BNSF-ACE Dispute:   the Insurance Policy

The ACE defendants (Doc. 57) and BNSF (Doc. 62) have filed motions for summary judgment on the issue of whether the CGL Policy and the Umbrella Policy obligate the ACE defendants to defend or indemnify BNSF for the *Parrish* lawsuit.   Each has responded to the respective motions (Docs. 65 and 68), and BNSF has replied to the ACE defendants' response (Doc. 71).

11

For the purposes of the pending motions only, the ACE defendants do not contest that BNSF is an "additional insured" under the CGL Policy.   They dispute, however, that the CGL Policy coverage extends to BNSF's liability from *Parrish* because Parrish was not injured by GML's conduct in the performance of GML's ongoing operations for BNSF, which under Endorsement 21 is the only type of bodily injury for which additional insureds are covered. Alternatively, the ACE defendants argue that even if the coverage extends to BNSF's liability for Parrish's injury under Endorsement 21, that liability it is excluded from coverage by the employer's-liability exclusion.   BNSF counters that Parrish's injury qualifies for coverage under Endorsement 21 and that the exception to the employer's-liability exclusion for sidetrack agreements applies to bring BNSF back within the CGL Policy's coverage.

Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false or fraudulent.   *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the complaint to the relevant provisions of the insurance policy.   *Id.*   If any theory of recovery in the underlying complaint falls within the insurance coverage, the insurer will have a duty to defend.   *Id.*   In making the comparison, the Court must give the policy and the complaint a liberal construction favor of the insured.   *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 753 (Ill. 2009).   Generally, the insured bears the burden of proving the claim is covered under a policy's grant of coverage, and the insurer bears the burden of proving an exclusion applies.   *Id.* at 752.

Under Illinois law, interpretation of an insurance policy is very similar to interpretation of other contracts as outlined earlier in this order, with the added presumption in favor of the insured where the policy is ambiguous.   Interpretation of an insurance policy, even an ambiguous policy, is a matter of law.   *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998).   As with other contracts, the Court must attempt to effectuate the parties' intention as expressed by the policy.   *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006).   If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms.   *Id.*   On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy.   *Id.*

The Court now turns to the question of whether the underlying complaint in *Parrish* alleges a situation covered by the CGL Policy.   Because the Court finds the CGL Policy's employer's-liability exclusion applies, the Court need not consider whether the liability was covered under Endorsement 21; even if it were, coverage would be excluded.   And because there is no coverage under the CGL Policy, there is no coverage under the Umbrella Policy.

1.   Employer's-Liability Exclusion

The ACE defendants argue that the employer's-liability exclusion precludes coverage for BNSF because Parrish was injured in the course of his employment with BNSF.   BNSF, on the other hand, argues that the exception to the exclusion for liability assumed under an "insured contract" – the Sidetrack Agreement – applies because GML agreed to assume liability for Parrish's injury under that agreement or, alternatively, because BNSF assumed liability for Parrish's injury under the indemnity clause of the Sidetrack Agreement, as discussed earlier in this

order.

The Court begins with the main clause of the employer's-liability exclusion in the CGL Policy.   Boiled down to its essence, that clause states that coverage is excluded for "[b]odily injury to . . . [a]n 'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured."   CGL Policy § I.A.2.e(1) (Doc. 58-2 at 17).   This kind of exclusion is "designed to preclude coverage in those areas normally covered by worker's compensation insurance."   *Aetna Cas. & Sur. Co. v. Beautiful Signs, Inc.*, 496 N.E.2d 1229, 1230 (Ill. App. Ct. 1986) (citing *Gen. Accident Fire & Life Assur. Corp. v. The Professional Golfers Assoc. of Am.*, 352 N.E.2d 441 (Ill. App. Ct. 1976)); *see Starnet Ins. Co. v. South West Indus., Inc.*, No. 08 C 1828, 2010 WL 1337690, at *2 (N.D. Ill. 2010).   General liability insurers use this kind of provision to avoid liability for employment injuries through indemnity.   *Beautiful Signs*, 496 N.E.2d at 1230.

To determine what the main clause means in this case, the Court substitutes the name of the appropriate party for the generic terms in the exclusion.   Here, the term "'insured' means any person or organization qualifying as such under Section II – Who Is An Insured," CGL Policy Preamble (Doc. 58-2 at 16), and includes additional insureds like BNSF.   *See James McHugh Constr. Co. v. Zurich Am. Ins. Co.*, 927 N.E.2d 247, 252 (Ill. App. Ct. 2010) (finding it obvious that "the insured" means "the insured seeking coverage," even when that insured is an additional insured).   Substituting BNSF for both instances of "the insured," the main clause of the employer's-liability exclusion effectively excludes "bodily injury to an employee of BNSF arising out of and in the course of employment by BNSF."   This is exactly what Parrish's complaint in the underlying lawsuit alleges – that he was a BNSF employee injured in the course of his work for BNSF, *Parrish* Compl. ¶¶ 6-7 (Doc. 58-5).   Therefore, the underlying complaint in *Parrish*

14

alleges an injury that is clearly excluded from coverage by the main clause of the employer's-liability exclusion of the CGL Policy.

Nevertheless, coverage may still be required if the exclusion's exception for "insured contracts" applies. BNSF suggests that when reading the employer's-liability exclusion as a whole, the Court should substitute BNSF for "the insured" in the main clause but should substitute GML for "the insured" in the exception clause. BNSF has offered no logical reason for this inconsistent interpretation of "the insured" within the same contract provision. *South West Indus.,* 2010 WL 1337690, at *2 (refusing to read "'the insured' in two distinct ways in the same *section* of the CGL" (emphasis in original)). Under a plain meaning interpretation, "the insured" in each instance means the same insured, be it a named insured or an additional insured, and that is the insured seeking coverage. *See Ashland, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, No. 97 C 7052, 1998 WL 774792, at * 9 (N.D. Ill. 1998) (finding "the insured" in the "insured contract" exception refers to the "insured seeking coverage").[3] Had the CGL policy referred to "any insured," the result might have been different, but that is not what the policy said.

Having determined that "the insured" refers to the same insured throughout the employer's-liability exclusion, to determine the meaning of the exception to the exclusion, the Court substitutes BNSF for "the insured." With that substitution, the exception states that the employer's-liability exclusion "does not apply to liability assumed by BNSF under an 'insured contract'" like the Sidetrack Agreement. But BNSF's liability for Parrish's injury does not arise out of any obligation it assumed under the Sidetrack Agreement. Instead, it arose out of its status

---

[3] By the same token, the employer's-liability exclusion would also be interpreted to substitute GML for all instances of "the insured." In that case, the exclusion would apply to liability for bodily injury to a GML employee injured in the course of working for GML except where GML had assumed liability for the injury under an "insured contract." That iteration of the exclusion is not relevant to this case.

as Parrish's employer in an industry covered by FELA.   It is true that in the indemnity clause of

the Sidetrack Agreement, BNSF agreed to bear its proportionate share of liability as provided by

law where GML and BNSF are jointly or concurrently negligent.   However, BNSF did not

assume any additional liability in that agreement beyond the legal obligation it already had as

Parrish's employer, which under FELA is quite substantial.   In other words, BNSF did not assume

any liability under the Sidetrack Agreement that it did not already have, so the "insured contracts"

exception does not apply.

For these reasons, the employer's-liability exclusion of the CGL Policy excludes coverage

for BNSF based on losses suffered from *Parrish*.

### 2.   Umbrella Policy

Because BNSF is not entitled to coverage under the CGL Policy, it is also not entitled to

coverage under the Umbrella Policy.   The Umbrella Policy provides that it covers as an "insured"

"[a]ny person or organization, if insured under 'underlying insurance,' provided that coverage

provided by this policy for any such insured will be no broader than coverage provided by

'underlying insurance,'" Umbrella Policy § II.B.6 (Doc. 58-3 at 7), and, in turn, defines

"underlying insurance" to include the CGL Policy, Umbrella Policy Schedule of Underlying

Insurance (Doc. 58-3 at 2).   Since the CGL Policy provides no coverage to BNSF for losses from

*Parrish*, neither does the Umbrella Policy, which would provide coverage no broader than the

CGL Policy.

### 3.   Illinois Insurance Code

The Illinois Insurance Code provides an award of attorney's fees and statutory penalties

against an insurer who vexatiously and unreasonably fails to settle or delays settlement of a claim.

16

215 ILCS 5/155(1).   An insurer's conduct is not vexatious or unreasonable if the insurer has a legitimate defense against coverage under a policy.   *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).   In this case, the Court has determined the ACE defendants' positions are meritorious, and there is no coverage for BNSF for losses from *Parrish*.   Therefore, the ACE defendants' conduct in declining coverage and refusing to settle could not have been vexatious or unreasonable.

The determination of these issues with respect to the CGL Policy and the Umbrella Policy resolves conclusively Counts IV, V, VI and VII.   Therefore, the Court will grant the ACE defendants summary judgment on those counts. [4]

## IV.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** GML's motion for partial summary judgment (Doc. 55);

- **DENIES** BNSF's motion for partial summary judgment against GML (Doc. 60);

- **FINDS as a matter of law** that GML did not agree in the Sidetrack Agreement to indemnify BNSF for BNSF's own negligence;

- **GRANTS** the ACE defendants' motion for summary judgment on Counts IV, V, VI and VII (Doc. 57);

- **DENIES** BNSF's motion for partial summary judgment against ACE American (Doc. 62);

---

[4] BNSF complains that the ACE defendants have asked for summary judgment on entire counts when Magistrate Judge Williams only allowed summary judgment motions on two limited issues. However, it would be impossible for BNSF to succeed on its breach of contract claims for failure to provide coverage where the insurance policies did not call for coverage.   Similarly, BNSF cannot succeed on its bad-faith failure to settle claims where there was no insurance coverage.   It would be a waste of the parties' time and judicial resources to allow these claims to linger when, based on the rulings in this order, they have no chance of success.   The Court further notes that the ACE defendants provided notice to BNSF that they were seeking summary judgment on entire counts, so BNSF had fair notice of what was at stake and a fair opportunity to be heard on the issues.

- **FINDS as a matter of law** that neither the CGL Policy nor the Umbrella Policy provides coverage for BNSF for losses from *Parrish*;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

ACE American and ACE P&C are terminated as parties to this case.

**IT IS SO ORDERED.**
**DATED:   June 30, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**